## STATE, USE OF JOHN W. WEDDLE *vs.* THE BOARD OF COUNTY SCHOOL COMMISSIONERS OF FREDERICK COUNTY.

*Board of County School Commissioners Not Liable in Action of Tort for Negligence Causing Injury to Pupil.*

A *quasi* corporation or governmental agency, such as a Board of School Commissioners having charge of the public school in a county, is not liable to an individual in an action of tort for negligence, unless such liability is imposed by statute.

Under Code, Art. 77, secs. 3, 19, etc., the local management of the public schools in each county is placed under the control of a Board of County School Commissioners, which is declared to be a body corporate with power to sue and be sued. The daughter of the equitable

plaintiff in this case, while a pupil in a public school under the control of the defendant, the Board of School Commissioners for that county, was fatally injured by running against, and being thrown down by a wire which was stretched across the grounds around the school, and the plaintiff sued to recover damages alleging negligence of the defendant in allowing the wire to remain in a position where it is likely to cause injury. Upon a demurrer to the declaration, *Held*, that the action is not maintainable since under the statute the defendant is liable to suit only with respect to such things as it is empowered to do, and the defendant has no funds with which to pay damages for a tort, all of its funds being appropriated by law to specific purposes, and the Constitution, Art. 8, sec. 3, provides that the school fund shall be kept inviolate and applied only to purposes of education.

Appeal from a judgment of the Circuit Court for Frederick County, (MCSHERRY, C. J.)

The cause was argued before FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Milton G. Urner* and *Hammond Urner*, (with whom was *Clayton O. Keedy* on the brief), for the appellant.

On October 4th, 1899, a little school girl, daughter of the equitable plaintiff, was running towards the public school house, at which she was a regular pupil, in response to the call of the bell rung at the close of "recess." A single strand of wire was suspended across the school grounds, by being firmly fastened to the trees, at a height of about four feet above the earth. As the child ran rapidly forward the wire struck her full in the face and threw her violently backward, her head striking upon a rock which protruded from the soil, by which she sustained a mortal injury resulting in death on the following day. The wire, by reason of its size and color, was not readily visible, and in the position just described, it was a source of great and constant danger to the children of the school. The negligence of the defendant corporation in reference to the maintenance of the wire in question, and the exercise of due care by the child, and the want of previous knowledge by the parent of the dangerous condition of the school premises, as alleged in the *narr.*, are all admitted by

the demurrer.    Substantially, the only question to be consid-
ered upon this appeal is the abstract liability of the defendant
in an action of tort.    If not liable in the present case, under
no combination of circumstances can it be held responsible in
damages for its negligence.

The question now presented is concerned exclusively with
the plaintiff's right to maintain his suit.    It has nothing what-
ever to do with his ability to collect his judgment after it
shall have been recovered.    If such a consideration as this
could be entertained upon demurrer to a *narr.*, then the in-
solvency of a defendant might be just as effectively urged in
opposition to a plaintiff's right of action.    The only reason
yet suggested why the plaintiff should not be permitted to
proceed with his case is that the defendant has no means of
satisfying the judgment.    In other words, the defendant can-
not be sued because it has no available assets.    But the stat-
ute declares emphatically that the defendant *can* be sued.    It
does not make the defendants' susceptibility to suit depend
upon its ability to respond in damages.    At a later stage of
this case, if the plaintiff should be successful, it will be mate-
rial to consider the proper method of collection.    At present,
unless we entirely misconceive the law, such a question is
wholly irrelevant.

It would seem to be amply sufficient for the immediate pur-
poses of this case to simply stand upon the exact and unqual-
ified letter of the Act.    As our right to sue the defendant is
there most unequivocally declared, and as this right is the
sole question under consideration at this time, we might well
afford to close the argument at this point.    It is suggested,
however, that the only funds within the control of the de-
fendant are appropriated by the law to specific purposes and
cannot be diverted to any other objects.    This proposition is
based upon the language of sec. 22 of Art. 77 of the Code,
which, in effect, declares that the county's share of the State
school tax and free school fund is intended primarily to pay
teachers' salaries and provide books and stationary, and if
such share should be inadequate for those purposes, the:

County Commissioners shall levy a tax to make good the deficiency. If the defendants' contention is well founded, it is absolutely incapable of incurring liability for any other purposes. The provisions of secs. 23, 27 and 35, however, by which the school funds are drawn upon for totally different objects, clearly show that the law did not intend such an inflexible appropriation of the defendants' funds. The defendant corporation being charged by the law with well defined duty, its funds are subject to the liability which arises from its neglect to properly discharge its duty. *Mersey Docks* v. *Gibbs,* 11 H. of L. cases, 699; *Coe* v. *Wise,* L. R. 1 Q. B. 711; *Winch* v. *Conservators of Thames,* L. R. 9 C. P. 378.

It is further submitted that as the Board of County School Commissioners is a duly constituted branch of the county government, its liabilities are included in the "claims on or against the county," for which the County Commissioners are directed to "levy all needful taxes," by sec. 7 of Art. 25 of the Code of Public General Laws.

In support of the defendant's liability for the acts of its subordinates, the district trustees, we cite : *Co. Com'rs of Anne Arundel Co.* v. *Duckett,* 20 Md. 468; *Co. Com'rs of Calvert Co.* v. *Gibson,* 36 Md. 229; *Baker* v. *Co. Com'rs of Balto. Co.,* 44 Md. 1; *Bassett* v. *Fish,* 75 N. Y. 303; *Broadwater* v. *Co. Com'rs,* 69 Md. 533; *Eyler* v. *Co. Com'rs,* 49 Md. 257; *B. & O. R. R. Co.* v. *Rose,* 65 Md. 485; *Barnes* v. *The District of Columbia,* 91 U. S. 556; *Bailey* v. *Mayor,* 2 Denio, 433; *Com'rs of Public Schools* v. *Allegany Co.,* 20 Md. 458; *School Com'rs* v. *School Com'rs.* 35 Md. 203; *Jones* v. *Keating,* 55 Md. 149.

*Jacob Rohrback* and *Vincent Sebold,* (with whom was *Frank L. Stoner* on the brief), for the appellee.

The Board of County School Commissioners while it has been designated in the Act as "a body politic and corporate" belongs to that class of corporations styled *quasi* corporations. *Rawle's Bouviers Dictionary,* vol. 2, p. 804; 2 *Kent Comm.,* 274; *Hedges* v. *Madison Co.,* 6 Ill. 567; *Riddle* v. *Proprietors of Locks, etc.,* 7 Mass. 169-187; *Russell* v. *Men of Devon,* 2

Term Rep. 667; *Merchants' Bank* v. *Cook*, 4 Pick. 414; *Chase* v. *Merrimac Bank*, 19 Pick. 569.

Can a corporation of this character, with its limited powers and authority, be made liable in an action of tort? To quote from the opinion of the learned Court below the defendant is a "governmental agency of the State without having the ordinary and usual powers of a corporation," further saying "if liable in this action the liability must be founded on the common law or on some statute. There can be no other basis. Whilst perhaps no precisely identical body corporate existed at the common law there were numerous ones, of a closely cognate nature. Against these *quasi* corporations which includes school districts, *Ang. & Ames Corp.*, secs. 23 and 24, it seems to have been well settled that an action of tort for a personal injury could not be maintained in the absence of statutory authorization." School districts are not strictly municipal corporations, but territorial divisions having many of the attributes of a corporation. *Wharton* v. *School Directors*, 42 Penn. St. 358, they are only *quasi* corporations and can exercise no powers except those specially conferred by statute. *Rapelye* v. *Van Sickler*, 1 Edm. (N. Y.) Sel. Cas. 175; *Sch. Dist.* v. *Thompson*, 5 Minn. 280; *Littlewort* v. *Davis*, 50 Miss. 403; *Sch. Dist.* v. *McLoon*, 4 Wis. 79; *Taylor on Public School Law in the U. S.*, par 43.

The powers and duties of these officers are derived exclusively from the statute. *Adams* v. *The State*, 82 Ill. 132. Their liability is wholly statutory. *Walthan* v. *Kemper*, 55 Ill.; *Buswell on Damages*, sec. 109; *Hollenbeck* v. *Winnebago Co.*, 95 Ill. 159; *Eastman* v. *Meredith*, 36 N. H. 284; *Comm. of Highways* v. *Martin*, 4 Mich. 557; *Board of Chosen Freeholders* v. *Strader*, 3 Har. (N. J.) 108. In *Bartlett* v. *Crozier*, 17 Johns, 439, Chancellor Kent, who pronounced the decision of the Court, doubted if the commissioners of highways would have been liable to such a suit, on the ground that "the law has not supplied them with the coercive power requisite to meet and sustain such an enormous and dangerous responsibility," and quoted the case of *Russell* v. *The Men of*

*Devon,* 2 T. R. 661; which was an action to recover in a private suit damages suffered in consequence of a bridge being out of repair, and the attempt was to charge two of the inhabitants of the county in behalf of all the rest.    But it was held by the King's Bench that no civil action lay against the inhabitants of a county for an individual injury in consequence of a breach of public duty.    *The county was not a corporation for that purpose, and had no corporate fund.*

Although the English books contain numerous cases of indictments or informations for neglect to repair highways and bridges, no instance has been referred to in the frequent discussions of the subject in England and in this country in which an English Court has sustained a private action against a public or municipal corporation or *quasi* corporation for such neglect except under a statute expressly or by necessary implication giving such a remedy.    *Hill* v. *Boston,* 122 Mass. 346.

In this State the liability of a public municipal corporation for damages arising from neglect to prevent or remove nuisances was placed by the Court of Appeals in the case of the *Mayor and C. C.* v. *Marriott,* 9 Md. 178 on the ground that the statutes of this State fixed the liability of the defendant, not that the defendant was liable at common law.    Also, see *Mayor and C. C.* v. *Pendleton and Harlan,* 15 Md. 12.    In *Co. Commissioners of A. A. Co.* v. *Duckett,* 20 Md. 477, the Court held the defendant liable because there was a concurrence of all the conditions necessary to constitute legal liability : a duty imposed by law; means and agents placed at their command to execute it; capacity to sue and be sued; invested with power to levy taxes, and that the defendants were the agents and representatives of the county, all the resources of which were placed at their disposal to enable them to perform their legal obligations, express or implied, imposed by the Act of its creation.    See also *Flynn* v. *Canton Co. of Balto.,* 40 Md. 312.

In *City of Providence* v. *Clapp,* 17 Howard, 161, in speaking of a municipal corporation, the Court said : " It is admitted

that the defendants are not liable for the injury complained of at common law, but that the plaintiffs must bring the case within the  *  *  *  *  statute."

" The results of the English authorities is, that when a duty is imposed upon a municipal corporation for the benefit of the public, without any consideration or emolument received by the corporation, it is only where the duty is a new one, and is such as is ordinarily performed by trading corporations that an intention to give a private action for the neglect in its performance is to be presumed," Gray, C. J., in *Hill* v. *Boston*, 122 Mass. 344–369.

It is true that the Act creating the defendant a body politic and corporate, says that it shall be capable to sue and be sued, but as the Court below say, apart from this provision, " there is not a suggestion in the statute that likens the case at bar to Duckett's case; but the liability to be sued must be treated as a liability to be sued *ex contractu* in respect to the things which the board is empowered to do. A suit in tort stands as it did at the common law, unless there is some provision made by which the damages when recovered may be collected, because when no such provision is made there is no intimation of a legislative sanction to the suit."

Could this defendant be liable in such an action its funds would be taken and applied to purposes other than that for which they have been placed in its hands as a part of the administrative branch of the State government, namely, for the purchase of free text and school-books, supplies, teachers salaries and ordinary repairs to school buildings. It would be against public policy to permit this to be done, and thereby cause the public schools to be closed or officers and teachers salaries to remain unpaid. As much so as to permit its buildings to be sold to pay a judgment obtained at the instance of the plaintiff, which could not be done. *Darling* v. *Mayor & C. C. of Balto.*, 51 Md. 11; *Poe, Pleading and Practice*, vol. 1, par. 513, and vol. 2, par. 643.

Sec. 3 of Art. 8 of the Constitution requires " The School Fund of the State shall be kept inviolate, and appropriated

only to the purpose of education." In sec. 103 of Art. 77 of Code it is provided " that if in any county the schools shall be kept open less than seven and a half months of the year, ending December thirty-first, the Comptroller shall withhold from such county the March instalment of the State school tax." The provisions and restrictions under which these funds are provided must be strictly observed. *Weir* v. *Day*, 35 Ohio, 143; *People* v. *Allen*, 42 N. Y. 404; *People* v. *Board of Education*, 13 Barbour, 400.

It is the particular duty of the Board of District School Trustees to have the care of the houses and lands connected therewith, intended for school purposes, a part of whose duty it is to attend to all repairs ; this is a particular duty resting on the Board of District School Trustees, and not resting on the defendant. It is safer that a private right should fail or wrong go unredressed, than that settled principles should be disregarded in order to meet the equity of particular cases. *Gittings* v. *Mayhew*, 6 Md. 134.

BRISCOE, J., delivered the opinion of the Court

The question raised by the demurrer to the plaintiff's declaration in this case is one of more than ordinary importance. The equitable plaintiff is a citizen of Frederick County, and on the 15th day of March, 1900, brought a suit at law in the name of the State in the Circuit Court for that county against the Board of County School Commissioners of Frederick County, under Art. 67 of the Code, to recover damages for the death of an infant daughter while a pupil of one of the public schools of the county, and whose death is alleged to have been caused by the negligence of the defendant.

The declaration substantially states that the defendant is a body politic and corporate under the laws of the State of Maryland, and as such has general control and supervision of the public schools and its property in Frederick County, and that it was its duty to keep this property in such condition as to be safe for the children attending the schools as pupils thereof ; that the defendant was the owner of a certain lot of

ground and building there situate in said county, and conducted upon the lot a public school known as "the Blue Mountain Public School" and had general supervision and control thereof; that on the 4th day of October, 1899, a single strand of wire was strung across the public school lot and firmly fastened upon trees growing thereon, and the wire was so strung and fastened at such a height above the ground as to be extremely dangerous to the pupils of the school when running and playing upon the lot; that the defendant wrongfully and negligently suffered and permitted the wire to be and remain upon the lot on the 4th of October, 1899, and a long time prior thereto. The declaration further avers that the daughter of the equitable plaintiff, on the 4th of October, 1899, while in attendance upon the public school, as a pupil and while running on the lot according to the habits of school children was knocked down and mortally injured by the wire aforesaid, which subsequently resulted in her death and for its alleged negligence in causing her death the plaintiff brings this suit.

The defendant demurred to this declaration, denying its liability in damages in this action, and from a judgment sustaining the demurrer, the plaintiff has appealed.

The question, then, presented for our consideration is, whether under the law, the defendant can be held liable in this action. The appellant contends that the defendant's liability arises under sec. 19, of Art. 77 of the Code, title Education, sub-title County School Commissioners, where the defendant is declared to be "a body politic and corporate" and is made "capable to sue and be sued," and that the declaration that the corporate body should be capable to sue or be sued should be construed as imposing unqualified liability in this respect.

Now it is well settled, we think, both upon principle and authority that at the common law, no action for tort could be maintained against a *quasi* corporation, and if the defendant is to be held liable in this case, it must be under the statute. *Duer* v. *Dashiell*, 91 Md. 668. In the case of *City of Provi-*

*dence* v. *Clapp*, 17 Howard, 161, the Supreme Court of the United States in passing upon a case where the suit was against the city of Providence to recover damages for an injury occasioned by an obstruction on the side-walk of one of its streets, said : "It is admitted that the defendants are not liable for the injury complained of at common law, but the plaintiff must bring the case within the statute to sustain the action." In *Hill* v. *Boston*, 122 Mass. 346, in which an action of tort was brought by a child who was attending a public school in a school house against the city of Boston for an injury suffered by reason of the unsafe condition of a staircase in the school house, it is said ; although the English books contain numerous cases of indictments    *    *    *    for neglect to repair highways, &c., no instance has been referred to, in the frequent discussion of the subject in England and in this country, in which an English Court has sustained a private action against a public or municipal corporation or *quasi* corporation for such neglect, except under a statute expressly or by necessary implication giving such a remedy.   So in *Mayor & C. C. Balto.* v. *Pennington*, 15 Md. 17; *Mayor, &c.*, v. *Marriott*, 9 Md. 173, and *County Commissioners* v. *Duckett*, 20 Md. 477, this Court placed the liability of a municipal corporation in an action in tort in those cases on the ground that the statute created it.

And this general doctrine is fully maintained by the following cases : *Russell* v. *Men of Devon*, 2 Term R. 661; 2 *Dillon Mun. Cor.*, sect. 962, and *Ang. & Ames on Corporations*, secs. 23, 24, 629; *Hedges* v. *Madison Co.*, 6 Ill. 567; *Riddle* v. *Merrimack Canal Co.*, 7 Mass. 169; *Adams* v. *The State*, 82 Ill. 132.

We think, then, it is clear that a body corporate of the character of the defendant in this case, cannot be made liable in an action of tort, in the absence of statutory authority. We must then look to the statutes to ascertain if the Legislature has expressly or by implication conferred any such right as is sought to be exercised in this case.   In other words, whether there is any statute authorizing a suit of this character to be maintained against the defendant.

It is provided by sec. 3 of Art. 77 of the Code, that educational matters of the State affecting a county shall be under the control of a Board of County School Commissioners, and in sec. 19 of the same Article the board is declared to be a body politic and corporate, and shall be capable to sue and be sued, &c., &c., and to exercise all the powers and privileges granted to or vested in them.    This Court said in *School Commissioners of Wicomico Co.* v. *School Commissioners of Worcester Co.*, 35 Md. 203, that while the Act of 1868, ch. 407, did not in terms incorporate the Board of County School Commissioners for the counties, and while they were not incorporated as legal entities in the full sense of the term, they were *quasi* corporations, with full power to sue and liable to be sued, *in respect to all matters within the scope of their duties* and obligations.    This results as well from the objects and purposes of such bodies as the mode and manner of their organization.    The Act of 1870, by express provision however incorporated the Boards of School Commissioners, and clothed them with full corporate powers with respect to their office and duties.

Now it is obvious, we think, that the Legislature intended by the use of the language "shall be capable to sue and be sued" to restrict the liability of the Boards of County School Commissioners to such suits, in respect to matters within the scope of their duties and to such things as the boards are empowered to do.    We find nothing in the statutes that would justify a different conclusion, or would sustain the contention of the appellant in this case.

There is no power given the Boards of School Commissioners to raise money for the purpose of paying damages, nor are they supplied with means to pay a judgment against them.    All of their funds are appropriated by law to specific purposes and they cannot be diverted by them.    The Constitution of the State, sec. 3, Art. 8 provides that the school fund of the State shall be kept inviolate and appropriated only to the purposes of education.    In *Perry* v. *House of Refuge*, 63 Md. 27, this Court distinctly held, in adopting the English

decisions on the subject, that damages could not be recovered from a fund held in trust for charitable purposes.   In the language of LORD CAMPBELL, the wrong-doer must pay from his own pocket.   *Head & Amory* v. *Providence Ins. Co.*, 2 Cranch, 127; *Rogers* v. *Burlington*, 3 Wall. 669; *McDonald* v. *Mass. Hos.*, 120 Mass. 432; *Heriot's Hospital* v. *Ross*, 12 Clark & Finnelly, 507; *Powers* v. *Mass. Hom. Hospital*, 109 Fed. Reporter, 295.

It follows, then, from what we have said that the Board of County School Commissioners of Frederick County, the appellee in this case, is not liable in this action, and the judgment on the demurrer will be affirmed.

*Judgment affirmed, with costs.*

(Decided January 16th, 1902.)