## UNIVERSITY OF MARYLAND *v.* F. LEONARD MAAS ET AL.

[No. 68, October Term, 1937.]

*Decided February 3rd, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hilary W. Gans, Deputy Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* for the appellant.

*Eugene Frederick,* with whom was *Robert R. Carman* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

The Maas Construction Company sued the University of Maryland in the Superior Court of Baltimore City and recovered a judgment for $11,000 damages for breach of contract, from which the defendant appealed. The questions here presented for review of this court arise on the ruling on a demurrer to a second amended declaration, and brings into question the immunity of this university from suit by reason of its status as a governmental agency of the State, and also a question on the ruling on a prayer relating to an alleged breach of contract by the appellees, which, by their own wrong, it is claimed, precluded a recovery. The prayer was rejected on the theory that the plaintiff had not violated the terms of the contract by ceasing work in the construction of a dormitory, as provided in the contract. The University of Maryland urged upon the lower court, as it does here, that because of the relationship it bears to the State, it was entitled to immunity from suits of this character; and, further, that all of its funds being appropriated by law for the purposes of such agency are, therefore, charged with the public trust, and it is restricted in its expenditures to legislative appropriations and to those purposes expressly designated by law, and without any inherent authority to raise money for the payment of claims against it.

The questions before us are: First, is the University of Maryland, as a governmental agency, protected and immune from suits for damages unless legislative authority has been given to sue it, and has such authority been given; second, does it possess funds with which to pay the judgment if recovered against it, and if not, does this suit fail for that reason; and, third, did the construction

company abandon the work under the contract without legal justification or excuse? We will consider these questions in the order named, first reviewing briefly the facts.

The contract in question provided for the construction of a dormitory for the University of Maryland. Under its terms, the construction company was entitled to receive ninety per cent of the value of the work done up to the first day of the month, less the sum of such payments previously made, and this payment was to be made on or about the tenth day of the succeeding month. The architect was required to certify, on or before the tenth day of each month, the amount of the work completed. Upon the failure of the University of Maryland to pay the construction company within seven days after the certificate was issued, the appellee had the right, upon seven days' written notice by them to the University of Maryland, to stop work and terminate the contract, and to recover from the University payment "for all work executed and any loss sustained upon any plant or materials and reasonable profits and damages."

In May, 1934, the work was commenced. A certificate, under the provisions of said contract, was issued on the 9th day of July, for $10,101.91, representing ninety per cent of the work actually done. The construction company, on the 11th day of July, demanded of the University of Maryland the payment of this sum, and notified it, unless the payment was made in accordance with the amount certified by the architect, pursuant to the terms of the contract, on or before seven days from the date of receiving the letter, they would stop work and terminate the contract.

The first difficulty between the parties grew out of a notice to the appellant, from the National Casualty Company, surety on the construction company's bond, requesting the university to withhold payments pending arrangements or assurances whereby the money paid would be used to pay subcontractors. Dr. H. C. Byrd, then vice-president of the university, notified the appellees

of this request from the surety company, and suggested that they communicate with the surety company and endeavor to reach an agreement with respect to the application of payments, and, on July 17th, consent was had from the surety company that the university pay the amounts certified by the architect. On the 18th of July, the foreman of the company was advised that the money would be available for the payment at any time. This information was given to the foreman because neither of the appellees could be found. On July 20th, counsel of the appellees was advised that the surety company had withdrawn its objection and that the money would be paid as soon as the check could be cleared through the comptroller's office, but on the next day, the 21st of July, the construction company wrote the regents of the university as follows: "You are hereby advised that all work on said contract is being terminated as of this date, the equipment removed, and from and after this date all materials on the job are there at your risk. Our watchman will not remain on the premises after tonight." With this exchange of communications and assertions of rights, work under the contract was finally terminated. The construction company brought this suit to recover damages for the breach of contract, and the demurrer raises the question first above mentioned.

It has been decided in *University of Maryland v. Murray*, 169 Md. 478, 182 A. 590, 591, that the University of Maryland is an arm or agency of the state government, and chapter 29 of the Laws of 1922, and the case of *University of Maryland v. Coale*, 165 Md. 224, 167 A. 54, further establish this beyond question, as well as the character of the governmental functions of this institution of learning. The decided cases here and elsewhere recognize and affirm the principle that purely governmental agencies, because of their relation to the state, are entitled to immunity from suits as is the state itself, unless the legislature has expressly authorized suits to be brought against it, but this authority to sue is not free from restrictions, even though they are not expressly

made by the legislature, for this court has held that suits may not be maintained unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose.

In the case of *State v. Rich*, 126 Md. 643, 95 A. 956, Judge Urner, speaking for this court, said: "In view of the relation which the commission thus bears to the State, it is entitled, in a case like the present, to the benefit of the state's immunity from suit, unless it has been made liable to be sued for negligence by legislative enactment." That case further supports the conclusion that it cannot be successfully contended that the State Roads Commission can rightfully apply any of the funds in its hands to the payment of damages for personal injuries, and that it is not vested with any authority to raise money for that purpose. The powers of the commission were definitely prescribed and the application of funds was specifically provided, and these provisions effectually prevent its funds being diverted to purposes other than those specifically named.

These conclusions are supported in the case of *Weddle v. School Commissioners*, 94 Md. 334, 51 A. 289. In the case of *Williams v. Fitzhugh*, 147 Md. 384, 128 A. 137, suit was brought against the Board of Trustees of the State Normal School by one of the teachers for damages for an alleged breach of contract of employment. The right to maintain this suit was denied on the ground that the Board of Trustees had no means of "procuring funds beyond the amount it receives from the state treasury under budget appropriations by the General Assembly for specific uses." To the same effect is the case of *Fisher & Carrozza Bros. Co. v. Mackall*, 138 Md. 586, 114 A. 580, and *Stanley v. Mellor*, 168 Md. 465, 178 A. 106.

The decisions in this state go further than holding that without legislative sanction an arm of the state government, such as the University of Maryland, may not be sued, and are to the effect that, even though there is a legislative authorization to sue, such suits may not be

maintained unless funds are available or may be made available by the agency itself for the purpose of paying the claim for damages that may be established by the suit. And this is supported by the case of *Fisher & Carrozza Bros. Co. v. Mackall, supra.* This court there said, quoting from *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289, and approving this doctrine as laid down in *State v. Rich, supra,* that, "notwithstanding the statute authorized a suit by or against a board of county school commissioners, the court held that the board was not liable in an action of tort because it had no power 'to raise money for the purpose of paying damages.'" This doctrine, as applied to actions in tort, is extended to actions in contract in the case of *Williams v. Fitzhugh, supra.*

So it is established that neither in contract nor tort can a suit be maintained against a governmental agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it.

It is conceded that the case of *University of Maryland v. Murray, supra,* is authority for the proposition that the University of Maryland is distinctly a state agency, but the doctrine that suits may not be maintained for the recovery of damages for tort, or breach of contract, could not be ascribed to that case, because that was not a suit for the recovery of money and did not involve the question whether funds were appropriated for specific purposes, or the right of the university to raise money for the purpose of paying damages. That case decided: "That the corporation thus created is an instrumentality or agency of the State is plain, and we do not understand it to be disputed. 'When the corporation is said, at the bar, to be public, it is not merely meant, that the whole community may be the proper objects of the bounty, but that the government has the sole right, as trustees of the public interests, to regulate, control and direct the cor-

poration, and its funds and its franchises, at its own good will and pleasure.' " *Dartmouth College. v. Woodward,* 4 Wheat. 518, 671, 4 L. Ed. 629; *Regents of University of Maryland v. Williams,* 9 G. & J. 365, 397; *Finan v. Cumberland,* 154 Md. 563, 564, 141 A. 269. Even though there were no decided cases on this subject, chapter 29 of the Laws of 1922 settles this question of governmental agency by declaring the University of Maryland to be a department of the state government. Under the Laws of 1920, ch. 480, the consolidation of the Maryland State College of Agriculture with the University of Maryland was effective and this "new corporation" was vested with all the rights and powers possessed by these two institutions.

Under the Laws of 1916, ch. 372, the State College of Agriculture was declared to be "capable in law suing and being sued" (section 1), and the University of Maryland, under the Laws of 1812 (chapter 159), was declared to "be able in law to sue and to be sued, plead and interplead, answer and be answered, in any Court or Courts, before any judge or judges within this State, and elsewhere, in all manner of suits, pleas, cases and demands of whatever kind, nature or form that may be, and to do all and every other matter and thing hereby contemplated to be done, in as full and effectual a manner as any other person or persons. bodies corporate or public in like cases can or may do." Thus was the University of Maryland by legislative enactments rendered liable to be sued, but even so, this does not fully satisfy the requirements of the rule, because it is definitely alleged and clearly shown that the University of Maryland has only such funds as are appropriated for its use by the Legislature of Maryland, to be distributed by another arm of the state government, namely, the Comptroller and Treasurer of the State, for definite and limited purposes, nor has the University of Maryland power or authority, in itself, to raise moneys for the payment of damages. Therefore, this suit can no more be maintained against the appellant than suits can be maintained against the State

Roads Commission (*Fisher & Carrozza Bros. Co. v. Mackall, supra*) ; the State Normal School (*Williams v. Fitzhugh, supra*) ; the School Commissioners for Frederick County (*Weddle v. School Commissioners, supra*) ; or the House of Refuge. See *Perry v. House of Refuge*, 63 Md. 20. See, also, *Stanley v. Mellor, supra; University of Maryland v. Coale, supra,* and *State v. Rich, supra;* and the recent case of *Mayor and City Council of Baltimore v. State, use of Blueford*, 173 Md. 267, 195 A. 571, where this question is again fully considered in an opinion written by Judge Offutt. See, also, *Harford County v. Love*, 173 Md. 429, 196 A. 122, where this subject is again under consideration.

This doctrine is supported in other jurisdictions in which there was a denial of the right to bring actions of tort against state agencies existing and operating under statutory and other authority or conditions analogous to those here presented. *Minear v. State Board of Agriculture*, 259 Ill. 549, 102 N. E. 1082; *Berman v. State Board of Agriculture*, 93 Minn. 125, 100 N. W. 732; *Hern v. State Agricultural Society*, 91 Iowa 97, 58 N. W. 1092; *Maia's Admr. v. Eastern State Hospital*, 97 Va. 507, 34 S. E. 617; *Moody v. State's Prison of North Carolina*, 128 N. C. 12, 38 S. E. 131; *Abston v. Waldon Academy*, 118 Tenn. 24, 102 S. W. 351; *Leavell v. Western Kentucky Asylum for the Insane*, 122 Ky. 213, 91 S. W. 671.

It is, nevertheless, strongly urged that the appropriation for the construction of the dormitory had already been made, to be paid out of federal and state funds in hand, and that there was available money with which to pay the appellee's claim for work done and materials provided and for reasonable profits thereon. The undisputed testimony of Dr. H. C. Byrd does not bear this out, but is to the contrary. He states that the University of Maryland did not have a penny with which, on its own account, to make such payments, or to pay a judgment recovered therefor. The manner in which payments, for the use or benefit of the University, were

made was clearly stated, as above. Even the tuitions received are paid into the state treasury and disbursed like other state funds.

The money, both state and federal, was appropriated for a certain and definite public need and for no other, and thus was impressed with a trust for the use of the public. The diverting of these funds, or any part thereof, for other uses, would be in violation of the purpose of this appropriation and cannot be sanctioned.

The plaintiffs, while asserting that these funds were available to pay their claim, offered no evidence to substantiate their contentions and it may be inferred that the entire fund appropriated has long since been expended in the construction of the proposed building. More than three and one-half years have elapsed since this project was inaugurated and the Attorney General, acting for the university, in his letter of August 13th, 1934, wrote counsel for the contractors, "Because of the refusal of the contractor to carry out its obligations under the contract * * * for no good cause, we are making other arrangements for the completion of the work"; and it is common knowledge that this dormitory has been completed and thus the funds in question have been expended. The prayer designed to withdraw the case from the jury should have been granted.

This being our conclusion, it is unnecessary to consider the other points raised by the prayers as to the right of recovery in the plaintiffs because of their own failure to comply with the terms of the contract in giving the notice provided for in the contract, before suit may be brought.

> *Judgment reversed without a new trial, with costs.*

URNER, PARKE, and JOHNSON, JJ., dissent.