O & B, INCORPORATED T/A Central Avenue Sunoco
ET AL. *v.* MARYLAND-NATIONAL CAPITAL
PARK AND PLANNING COMMISSION

[No. 60, September Term, 1976.]

*Decided February 22, 1977.*

460

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Darlene G. Perry,* with whom were *Edward P. Camus* and *Camus & Perry* on the brief, for appellants.

*Barbara A. Sears,* with whom was *Sanford E. Wool* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The principal question presented by this case is whether the Maryland-National Capital Park and Planning Commission (hereinafter referred to as the "Commission") is a state agency for purposes of the defense of sovereign immunity in tort suits.

On July 22, 1974, fourteen individuals brought in the Circuit Court for Prince George's County an action in trespass and conversion against O & B, Inc., t/a Central Avenue Sunoco, and Ronald Osbourn. The plaintiffs alleged, *inter alia,* that while they were attending an event at the Washington National Arena, known as the "Capital Centre," at Largo, in Prince George's County, their automobiles were wrongfully towed from the Capital Centre's parking lot by the defendants' employees and taken to defendants' garage, where the defendants refused to release them upon demand or tender of reasonable fees. In answering interrogatories propounded to them, the defendants indicated that the automobiles had been "illegally parked" and therefore removed and "impounded" by them at the express direction of the Commission's Park Police.

Pursuant to Maryland Rule 315, the defendants impleaded the Commission, alleging that the Commission was responsible for "any and all acts of conversion alleged to have occurred." Subsequently, a motion raising preliminary

objection, pursuant to Rule 323 b, was filed on behalf of the Commission, requesting dismissal of the third-party complaint "on the ground that it has governmental immunity as an agency of the State of Maryland." After a hearing, the trial court (Levin, J.) granted the motion and, upon the court's express determination that there was no just reason for delay, directed the entry of a final judgment in favor of the Commission pursuant to Rule 605 a. O & B and Osbourn appealed from the judgment to the Court of Special Appeals, and we granted a writ of certiorari prior to a decision by that court.

(1)

The broad doctrine of sovereign immunity for the state or its agencies is firmly established in Maryland law. Recently, in *American Structures v. City of Balto.*, 278 Md. 356, 359, 364 A. 2d 55 (1976), the principle was stated as follows:

"In Maryland, the rule of our cases is clear. If an action is brought for a money judgment in contract or in tort against the State or an agency of the State without the State's consent, actual or implied, it must be defended on the ground of sovereign immunity, which cannot be waived unless funds have been appropriated for the purpose or the agency can provide funds by taxation. *Calvert Associates Limited Partnership v. Department of Employment & Social Services*, 277 Md. 372, 357 A. 2d 839 (1976); *Charles Brohawn & Bros. v. Board of Trustees of Chesapeake College*, 269 Md. 164, 304 A. 2d 819 (1973); *Jekofsky v. State Roads Comm'n*, 264 Md. 471, 287 A. 2d 40 (1972); *University of Maryland v. Maas*, 173 Md. 554, 559, 197 A. 123, 125 (1938); *Dunne v. State*, 162 Md. 274, 159 A. 751 (1932); *State v. Baltimore & Ohio R.R.*, 34 Md. 344 (1871), *aff'd*, 21 Wall. 456 (1875). *See also Central Collection Unit v. Atlantic Container Line, Ltd.*, 277 Md. 626, 356 A. 2d 555 (1976)." [1]

1. As to contract actions only, however, the Legislature has recently waived the State's immunity from suit under certain conditions, Ch. 450 of the Acts of 1976.

However, unlike the total immunity granted to the state and its agencies with respect to actions arising in tort, the immunity of counties, municipalities or local governmental agencies in such actions is limited in scope. In a tort action, it has been held that a political subdivision may invoke the defense of governmental immunity only when the alleged tortious conduct occurred while the county or municipality was exercising a "governmental" rather than a "proprietary" function. *Carey v. Baltimore County*, 262 Md. 491, 278 A. 2d 6 (1971); *Robinson v. Bd. of County. Comm'rs*, 262 Md. 342, 278 A. 2d 71 (1971); *Godwin v. County Comm'rs*, 256 Md. 326, 260 A. 2d 295 (1970); *Baltimore v. State*, 173 Md. 267, 195 A. 571 (1937).

In view of these principles, the issue before us is whether the Commission is properly characterized as an agency of the state or as a local governmental agency for the purpose of determining its immunity from tort suits. For the reasons set forth below, we believe that the Commission is a state agency.

There is no single test for determining whether a governmental body is an agency of the state for purposes of sovereign immunity. Rather, it is necessary to examine the relationship between the state and the governmental entity to determine its status as either a state agency or a county or municipal agency. For example, we have held that a community college, partially funded by local funds and having a board of trustees comprised of members of the board of education for the county, is a state agency. We reached this conclusion in view of the fact that community colleges, although somewhat local in nature, are created by the state and not by the action of the counties in which they are located, and because the powers of the boards of trustees of the community colleges are set forth in public general laws. *Board v. John K. Ruff, Inc.*, 278 Md. 580, 366 A. 2d 360 (1976); *Chas. E. Brohawn & Bros. v. Board*, 269 Md. 164, 167-171, 304 A. 2d 819 (1973). *Cf. Prince Geo's Co. v. Bd. of Trustees*, 271 Md. 21, 313 A. 2d 678 (1974).

The history of the Maryland-National Capital Park and Planning Commission was reviewed by the Court in *Pr.*

*George's Co. v. Md.-Nat'l Cap.*, 269 Md. 202, 205-207, 306 A. 2d 223 (1973), as follows:

"The General Assembly originally created the Commission by Chapter 448 of the Laws of 1927 (Chapter 448). By this extensive statute, the Commission administered certain park development, planning and zoning functions within those portions of Prince George's and Montgomery Counties adjoining the District of Columbia. Designated as the Maryland-Washington *Metropolitan* District (Metropolitan District), this original area was roughly located between the District of Columbia and what is now the Capital Beltway. The Commission was given the power to sue and be sued, issue bonds, implement land use and subdivision regulations and generally effectuate the purpose of Chapter 448 which was the 'co-ordinated, comprehensive, adjusted, systematic and harmonious development of the [Metropolitan] District.' Exclusive power over planning and zoning was vested in the Commission and the Boards of County Commissioners of the two counties.

"Chapter 714 of the Laws of 1939 created the Maryland-Washington *Regional* District (Regional District) under the jurisdiction of the Commission. The Regional District included basically the Metropolitan District with some additions. Under this Chapter, the Commission's 'park and planning functions in the district were separated, and the Maryland-Washington Regional District . . . was created as the planning and zoning district.' *Prince George's Co. v. Laurel,* 262 Md. 171, 174, 277 A. 2d 262, 264 (1971).

"In 1943, the General Assembly by Chapter 992 repealed Chapter 714 and re-enacted it 'with amendments as a bi-county act applicable to the Maryland-Washington Regional District in

Montgomery and Prince George's Counties and not as a public local law of either county . . . .' Likewise, in 1943, the General Assembly indicated its intent to clarify the status of the law pertaining to the Metropolitan District by enacting Chapter 1008 'as a single bi-county Act . . . and not as a public local law or laws of either county.'

"In 1959, the General Assembly consolidated all of the provisions relating to the Commission by enacting Chapter 780 of the Laws of Maryland. It repealed certain sections of the Codes of Montgomery and Prince George's Counties pertaining to the Commission, repealed all earlier Chapters (discussed above) and enacted in lieu thereof a new subtitle 'Park and Planning Commission.' The law basically continued the Commission, expanded the areas under its jurisdiction and redesignated its functions under the subheadings 'Metropolitan District' and 'Regional District.' "

More recently, the laws pertaining to the Commission were codified as Maryland Code (1957, 1976 Cum. Supp.), Art. 66D, pursuant to Ch. 892 of the Acts of 1975.

Like community colleges, the Commission functions only on a regional basis and is subject to some control by the counties within the region. All activities of the Commission are presently limited to Prince George's and Montgomery Counties. Members of the Commission are appointed by the county executive and the county council of the two counties as provided in Art. 66D, § 2-101. Additionally, the county council of each county "may add to, delete from, increase, or decrease, any part of the portion of the [Commission's] budget allocated solely to its county," § 2-118 (4).

Despite this degree of local control, the Commission, like the community colleges, was created by the State and not by the action of Prince George's or Montgomery Counties. The powers and duties of the Commission are set forth in public

general laws, and the counties may exercise only that control over the Commission which is expressly permitted by the General Assembly. As pointed out in *Pr. George's Co. v. Md.-Nat'l Cap.*, *supra*, 269 Md. at 229-230, the Commission, created by a public general law, is not a county agency subject to the provisions of the county charter.

Moreover, there are certain provisions of Art. 66D which indicate that the Commission is more properly characterized as a state agency rather than a local governmental agency. The Commission, for purposes of intergovernmental relations, is designated as the representative of the State of Maryland in the acquisition and development of property and in the performance of its duties, § 4-101. Contracts or commitments for acquiring park lands in the metropolitan district may be binding upon the State of Maryland, § 4-105. Title to land acquired by the Commission for the metropolitan district vests either in the metropolitan district or in the State of Maryland unless the General Assembly approves a different title holder, § 5-103. The control, maintenance, operation, or policing of metropolitan district property may not be surrendered to any entity other than the Commission without approval of the General Assembly, § 5-103. Lands acquired by the Commission, title to which shall become vested in the State of Maryland, shall be held "for the general benefit of the citizens of the State of Maryland," § 5-107. The Commission, in the performance of its planning functions, is directed to make recommendations to the General Assembly for the coordinated development of transportation services and facilities within the metropolitan district, § 5-116.

Thus, although the Commission has local functions and responsibilities, it appears that the General Assembly has created the Commission as the state agency responsible for coordinating planning, zoning and recreational activities within the Washington metropolitan area which otherwise would be the sole responsibility of the counties. Even though Prince George's and Montgomery Counties exercise some control over the Commission, the extent to which they do so is determined by the General Assembly and not by the

county charters or the county laws. The powers and duties of the Commission, created by the General Assembly, are solely within the control of the General Assembly.

For these reasons, we find that the Commission is properly characterized as a state agency for the purpose of determining its right to invoke the doctrine of sovereign immunity.

(2)

Although the Commission is a state agency, and as such generally immune from actions in tort, the defendants O & B and Osbourn contend that the Commission's immunity has been waived by statute. In support of this contention, the defendants rely upon Art. 66D, § 2-110, which provides:

"The Commission may exercise all powers and functions granted to it in this article. It may use a common seal, *sue and be sued* and do any and all other corporate acts for the purpose of carrying out the provisions of this article." (Emphasis supplied.)

In *Lohr v. River Commission,* 180 Md. 584, 26 A. 2d 547 (1942), the Court considered whether identical language contained in the act creating the Upper Potomac River Commission, a similar bi-county agency created by the Legislature, constituted a waiver of sovereign immunity. It was held that the "sue and be sued clause" was not a general waiver of immunity but was limited to such actions as would be necessary to carry out the agency's purposes. Thus, the Court explained this provision as follows (180 Md. at 588-589):

"In considering the question of whether the words 'to sue and be sued' ... were intended to constitute a waiver of immunity, we must not confine ourselves to those words alone, but we must construe them in connection with the other language of the Act. The sentence in which those words are used is 'with the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the

provisions of this Act.' That sentence must be considered in its entirety, and when so considered, it definitely is not a general consent to suits of any and all kinds, but it is expressly limited to such actions as would be necessary in order to carry out the purpose for which the Commission was created. The words 'other corporate acts' clearly indicate the extent to which the permission to sue and be sued was intended. The language used is not to sue and be sued *as other corporations.* Had such words been employed a broader consent might have been indicated."

*See also Board v. John K. Ruff, Inc., supra; Weisner v. Bd. of Education,* 237 Md. 391, 206 A. 2d 560 (1965); *State v. Rich,* 126 Md. 643, 95 A. 956 (1915); *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289 (1902).

Nor does § 1-102 of Art. 66D constitute an express waiver of sovereign immunity as the defendants contend. That section provides:

"All property of every kind belonging to or in the possession of the Commission immediately prior to July 1, 1975 is not abated, but is continued in the name of the Commission herein continued with the same effect as if so originally brought or begun. *All subsisting liabilities, obligations, contracts, claims, or demands at law or in equity accrued or to accrue against the Commission* or in favor of the Commission without further formality or action of any kind shall be and become on July 1, 1975 the liabilities, obligations, contracts, claims, or demands at law or in equity of the Commission herein continued. No criminal action, prosecution, or indictment arising under the laws of the Commission at any time prior to July 1, 1975 is affected by the enactment of this article. Any such criminal action, prosecution, or indictment shall be prosecuted under the laws in force prior to July 1, 1975." (Emphasis supplied.)

This section is merely a "continuation clause" that is often found in legislative revisions of pre-existing entities. The purpose of Ch. 892 of the Acts of 1975 was to place, for the first time, all laws relating to the Commission in the Annotated Code of Maryland. Section 1-101 of Art. 66D provides for the continuation of the Commission and states that it is the same agency created by Ch. 448 of the Acts of 1927. Section 1-102, read in this context, merely states that all obligations and liabilities of the Commission remain in force. It does not create any new liability on the part of the Commission.

In view of our holdings that the Commission is a state agency and that there has been no legislative waiver of immunity with respect to tort actions, we need not consider whether funds for payment of tort judgments have been appropriated.

*Judgment affirmed.*

*Appellants to pay costs.*