LEONARD KATZ ET AL. *v.* WASHINGTON SUBURBAN
SANITARY COMMISSION

[No. 48, September Term, 1978.]

\* \* \*

THE CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF MARYLAND *v.* WASHINGTON
SUBURBAN SANITARY COMMISSION

[No. 49, September Term, 1978.]

\* \* \*

LIBERTY MUTUAL INSURANCE COMPANY *v.*
WASHINGTON SUBURBAN SANITARY
COMMISSION

[No. 50, September Term, 1978.]

*Decided February 23, 1979.*

504

*Allen J. Katz* for appellants Leonard Katz et al. *Kevin M. O'Connell,* with whom were *David E. Betts* and *Betts, Clogg & Murdock* on the brief, for appellant The Chesapeake & Potomac Telephone Company of Maryland. *William O. Lockwood,* with whom were *Quinn, Scanlin, Maiberger & Lockwood* on the brief, for appellant Liberty Mutual Insurance Company.

*Albert D. Brault,* with whom were *Stephen H. Ring* and *Brault, Graham, Scott & Brault* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We deal here in a single opinion with three separate but related appeals involving appellee Washington Suburban

Sanitary Commission's invocation of the defense of governmental immunity from tort liability. At issue in each case is whether the Circuit Court for Montgomery County properly concluded that the Washington Suburban Sanitary Commission (the WSSC) is a State agency entitled to governmental immunity and that this immunity has not been waived. We granted certiorari in all three cases prior to decision by the Court of Special Appeals.

In Appeal No. 48, the appellants allege that the WSSC is liable in tort for damage to their goods and inventory which resulted when a water main owned by WSSC burst and flooded their basement. The court (Mathias, J.) granted WSSC's motion raising preliminary objection under Maryland Rule 323 a 9, holding that WSSC is "a state agency and as such entitled to sovereign immunity unless waived." The court considered § 1-3 of the Washington Suburban Sanitary District Code (1970) [1] in determining whether there had been a waiver of WSSC's sovereign immunity. That section provides:

> "The members of said commission shall be a body corporate by the name of the 'Washington Suburban Sanitary Commission,' with the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this chapter. In the event of a judgment at law or in equity being recovered against said commission or for the purpose of amicably adjusting threatened or pending litigation, the commission shall at the annual tax levying period of the county council of Montgomery County and the county commissioners of Prince George's County next succeeding the rendition of said judgment or compromise, certify to said county council of Montgomery County and county commissioners of Prince George's County, a tax rate, in addition to

---

1. The WSSD Code was legalized by the General Assembly and made evidence of the law by ch. 115 of the Acts of 1971. The provisions of the WSSD Code are also codified as ch. 86, Montgomery County Code (1972, 1977 Repl. Vol.) and as Appendix I of the Prince George's County Code (1975 ed.).

that required for its interest, serial bonds and sinking fund requirements, that will, when levied and collected under the provisions of . . . [section 4-5 of this Code], produce an amount sufficient to satisfy said judgment or other sum including costs and counsel fees, if any, provided, however, that this provision shall relate only to any cause of action occurring subsequent to April 26, 1927. . . ."

The court concluded that § 1-3 did not effect a waiver of WSSC's sovereign immunity.

The Chesapeake & Potomac Telephone Company of Maryland, appellant in No. 49, sued WSSC for compensatory damages for money expended in repairing telephone cables which had been severed by WSSC's contractor. In granting a motion raising preliminary objection, the court (Fairbanks, J.) held that "WSSC is a state agency for the purposes of determining its right to invoke the doctrine of sovereign immunity," and that there had been no statutory waiver of its immunity under § 1-3 of the Sanitary District Code.

In No. 50, Liberty Mutual Insurance Company, exercising its rights of subrogation, sued WSSC to recover money that it paid to a policyholder whose house was destroyed by fire. Liberty Mutual alleged that WSSC's negligent maintenance of fire hydrants caused the fire department pumps to become clogged with rocks and debris which entered the pumps from WSSC's hydrants. The court (Mitchell, J.) granted WSSC's motion raising preliminary objection on the ground of sovereign immunity and dismissed the action.

The appellants contend that the WSSC is not a State agency or instrumentality, but is simply a local entity which provides water and sewer services for its own customers in Montgomery and Prince George's Counties and collects revenues for these services by monthly billing. They maintain that even if the WSSC is a State agency, § 1-3 constitutes an effective waiver of its governmental or sovereign immunity because it expressly permits the WSSC to "sue and be sued" and to raise funds to satisfy any judgment rendered against it.

The WSSC argues that it is a "sister agency" to the Maryland-National Capital Park and Planning Commission, and that the reasons for our holding in *O & B, Inc. v. Md.-Nat'l Cap. P. & P.,* 279 Md. 459, 369 A. 2d 553 (1977), that the Commission is a State agency, which had not waived its immunity from suit, apply with equal force to the WSSC. It reasons that no waiver of its sovereign immunity can be found in § 1-3 because the power "to sue and be sued" does not of itself constitute either an express or an implied waiver. Further, it asserts that the authority bestowed upon it to certify a tax rate sufficient to satisfy judgments does not constitute authority to mandate such an appropriation and that absent such a mandate, there would be no fund to satisfy a judgment.

## I

The doctrine of sovereign immunity from suit, rooted in the ancient common law, is firmly embedded in the law of Maryland.[2] *See, e.g., Bradshaw v. Prince George's County,* 284 Md. 294, 396 A. 2d 255 (1979); *American Structures v. City of Balto.,* 278 Md. 356, 364 A. 2d 55 (1976); *University of Maryland v. Maas,* 173 Md. 554, 197 A. 123 (1938). Although originally based on the tenet that "the King can do no wrong," the doctrine is presently viewed as a rule of policy which protects the State from burdensome interference with its governmental functions and preserves its control over State agencies and funds. *See Godwin v. County Comm'rs,* 256 Md. 326, 260 A. 2d 295 (1970); *Baltimore v. State,* 173 Md. 267, 271, 195 A. 571, 573-74 (1937); *State v. Wingert,* 132 Md. 605, 104 A. 117 (1918); *State v. B. & O. R. R. Co.,* 34 Md. 344 (1871), *aff'd,* 88 U. S. 456 (1875); 72 Am. Jur. 2d *States, Territories, & Dependencies* § 99 (1974).

In Maryland the doctrine of sovereign immunity is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary

2. The legislature waived the State's immunity from suit in certain contract actions by ch. 450 of the Acts of 1976, now codified as Maryland Code (1978 Repl. Vol.), Art. 41, § 10A.

implication. *Godwin, id.* at 334, 260 A. 2d at 299.[3] We held in *Board v. John K. Ruff, Inc.,* 278 Md. 580, 590, 366 A. 2d 360 (1976), "that when the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations." We there pointed out, however, that it does not necessarily follow that a money judgment may be obtained, even with respect to matters within the scope of the agency's duties. We explained:

> "Legislative authority for a governmental agency to be sued is not free from restrictions, even though limitations are not expressly made by the Legislature. Such authority does not impose unqualified liability even as to matters within the scope of the agency's duties and obligations. This Court has consistently held that suits may not be maintained unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose. We said in *University of Maryland v. Maas, supra,* 173 Md. at 558-559, 197 A. at 125:
>
>> 'The decisions in this state go further than holding that without legislative sanction an arm of the state government . . . may not be sued, and are to the effect that, even though there is a legislative authorization to sue, such suits may not be maintained unless funds are available or may be made available by the agency itself for the purpose of paying the claim for damages that may be established by the suit. . . .
>>
>> So it is established that neither in

---

3. Unlike the total immunity from tort liability which the State and its agencies possess, the immunity of counties, municipalities and local agencies is limited to tortious conduct which occurred in the exercise of a "governmental" rather than a "proprietary," function. O & B, Inc., *supra;* Robinson v. Bd. of County Comm'rs, 262 Md. 342, 278 A. 2d 71 (1971).

contract nor tort can a suit be maintained against a government agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it.' " 278 Md. at 590-91.

## II

We think the lower courts correctly decided that the WSSC is a State agency. Created by the legislature through a public general law (ch. 122 of the Acts of 1918), the WSSC is vested with broad authority to construct and operate water supply and sewer systems within the Washington Suburban Sanitary District, which comprises most of the counties of Prince George and Montgomery adjacent to the District of Columbia. Under various provisions of the Washington Suburban Sanitary District Code (the WSSD Code), the WSSC is also authorized to construct and operate within the Sanitary District refuse and drainage disposal systems and marina and boat basins. It is authorized to construct and operate water supply systems in and for the residents of Anne Arundel and Howard Counties.

The WSSC operates under the jurisdiction of a six-member commission. Three members are appointed from Montgomery County and three from Prince George's County. The appointments are made by the county executive and county council of the respective counties, pursuant to detailed governing provisions of the WSSD Code. The capital and operating budgets of the WSSC are, with limitations, subject to review and approval by the county executives and county councils of the two counties. The WSSC is vested with the State's sovereign power of eminent domain. It is authorized to create an employee merit system, subject in some particulars to compliance with state law governing state employees and to directives of the State Secretary of Personnel. It is authorized to enter into contracts with the

District of Columbia authorities and with any federal, state, county or municipal authorities, and with any public water, sewerage or drainage commission; such contracts "have the full force and effect" of a contract with the State of Maryland. WSSD Code, § 1-9. It is empowered by § 9-1 of the WSSD Code to make and enforce rules and regulations as may be necessary to carry out the provisions of law.

As we observed in *O & B, Inc. v. Md.-Nat'l Cap. P. & P.,* *supra,* "[t]here is no single test for determining whether a governmental body is an agency of the state for purposes of sovereign immunity." 279 Md. at 462. The relationship between the State and the governmental body must be examined in order to determine its status as either a state agency or a county or municipal agency. *See, e.g., Board v. John K. Ruff, Inc.,* 278 Md. 580, 366 A. 2d 360 (1976), where we considered the status of a community college, partially funded by local funds and with a board of trustees comprised of members of the county board of education. Despite these indicia of local agency status, we concluded that the college was more properly characterized as an agency of the State because, among other things, it was created by the State, and because the powers of the board of trustees are set forth in public general laws. *See also Chas. E. Brohawn & Bros. v. Board,* 269 Md. 164, 304 A. 2d 819 (1973).

In *O & B, Inc. v. Md-Nat'l Cap. P. & P., supra,* we held that the Maryland-National Capital Park and Planning Commission was an agency of the State for the purpose of determining its immunity from tort suits. That Commission was created by public general law to coordinate planning, zoning and recreational activities within the Maryland-Washington Regional District, comprising Prince George's and Montgomery Counties. The public general law creating the Park and Planning Commission provided that its members be appointed by the county executive and the county council of the two counties. In holding that the Park and Planning Commission was more properly characterized as a State, rather than a local governmental agency, we said:

> "The Commission, for purposes of inter-governmental relations, is designated as the representative of the State of Maryland in the

acquisition and development of property and in the performance of its duties .... Contracts or commitments for acquiring park lands in the metropolitan district may be binding upon the State of Maryland .... Title to land acquired by the Commission for the metropolitan district vests either in the metropolitan district or in the State of Maryland unless the General Assembly approves a different title holder .... The control, maintenance, operation, or policing of metropolitan district property may not be surrendered to any entity other than the Commission without approval of the General Assembly .... Lands acquired by the Commission, title to which shall become vested in the State of Maryland, shall be held 'for the general benefit of the citizens of the State of Maryland,' .... The Commission, in the performance of its planning functions, is directed to make recommendations to the General Assembly for the coordinated development of transportation services and facilities within the metropolitan district .... " 279 Md. at 465, 369 A. 2d at 556.

We noted that the Commission was created by the State and not by the action of Prince George's or Montgomery Counties, that its powers and duties are set forth in public general laws, and that the counties may exercise only that control over the Commission which is expressly permitted by the General Assembly. We concluded:

"Even though Prince George's and Montgomery Counties exercise some control over the Commission, the extent to which they do so is determined by the General Assembly and not by the county charters or the county laws. The powers and duties of the Commission, created by the General Assembly, are solely within the control of the General Assembly.

"For these reasons, we find that the Commission is properly characterized as a state agency for the

purpose of determining its right to invoke the doctrine of sovereign immunity." 279 Md. at 465-66, 369 A. 2d at 556.

Despite a degree of regional control, the WSSC, like community colleges and the Park and Planning Commission, was created by the State and not by the counties in which it operates. We observed in *Barranca v. Prince George's Co.,* 264 Md. 562, 567-68, 287 A. 2d 286, 289 (1972), that the law creating the WSSC was a public general law, and not a public local law or a law subject to the provisions of county charters. We have previously recognized that the WSSC is a "sister agency" which possesses powers and characteristics similar to those granted to the Park and Planning Commission. *Md.-Nat'l Cap. P. & P. v. Mont. Co.,* 267 Md. 82, 90, 296 A. 2d 692, 696 (1972). Like the Park and Planning Commission, the WSSC has regional functions and responsibilities; both were created by the General Assembly as State agencies responsible for providing services which would otherwise be the responsibility of the counties. *See O & B, Inc.,* 279 Md. at 464-65. Considering all relevant factors, the WSSC is properly characterized as a State agency for the purpose of determining the applicability of the doctrine of sovereign immunity.

### III

Although WSSC is a State agency, and as such immune from tort liability, appellants maintain that § 1-3 of the WSSD Code constitutes a waiver of that immunity. We agree.

We are mindful that "[c]ourts should not hold that immunity from suit, one of the highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication." *Dunne v. State,* 162 Md. 274, 288-89, 159 A. 751, *appeal dismissed,* 287 U. S. 564 (1932). *Accord, Calvert Associates v. Department,* 277 Md. 372, 357 A. 2d 839 (1976); *Chas. E. Brohawn & Bros. v. Board,* 269 Md. 164, 304 A. 2d 819 (1973). Therefore, we have consistently refused to judicially

abrogate sovereign immunity, and we have stated that any waiver of immunity must come from the legislature. *See, e.g., Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 278 A. 2d 71 (1971); *State v. Baltimore County,* 218 Md. 271, 146 A. 2d 28 (1958). In examining a statute to determine whether it effectively waives sovereign immunity, we strive to effectuate the legislature's intent. *See Weaver v. Prince George's County,* 281 Md. 349, 365, 379 A. 2d 399 (1977); *Board v. John K. Ruff, Inc.,* 278 Md. 580, 366 A. 2d 360 (1976).

As heretofore indicated, a legislative waiver of sovereign immunity is ineffective unless specific legislative authority to sue the agency has been given, and unless there are funds available for the satisfaction of the judgment, or power reposed in the agency for the raising of funds necessary to satisfy a recovery against it. *American Structures v. City of Balto.,* 278 Md. 356, 359, 364 A. 2d 55 (1976); *Chas. E. Brohawn & Bros. v. Board, supra; University of Maryland v. Maas,* 173 Md. 554, 559, 197 A. 123, 125 (1938); *Fisher & Carozza Co. v. Mackall,* 138 Md. 586, 114 A. 580 (1921); *State v. Rich,* 126 Md. 643, 95 A. 956 (1915). To constitute an effective waiver, therefore, § 1-3 of the WSSD Code must contain both a clear waiver of immunity as to matters within the scope of the agency's duties and obligations, and an authorization for the appropriation of funds to satisfy a judgment rendered against it in tort.

The mere legislative authorization for a State agency "to sue and be sued" does not alone constitute a general waiver of immunity. Rather, it is limited to such matters, as those involved in the instant appeals, necessary to carry out the purpose for which the agency was created. *O & B, Inc., supra; Lohr v. River Commission,* 180 Md. 584, 26 A. 2d 547 (1942); *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289 (1902). It is thus necessary to consider the context in which the words "to sue and be sued" appear in the legislative enactment. Unlike the statutes in *O & B, Inc.* and *Lohr,* § 1-3 of the WSSD Code does not merely empower the WSSC "to sue and be sued." Rather, in unmistakable terms, it contemplates the filing of suits against the WSSC for matters within the scope

of its responsibilities, and the recovery of judgments against it. Section 1-3 specifically provides:

"In the event of a judgment at law or in equity being recovered against said commission or for the purpose of amicably adjusting threatened or pending litigation, the commission shall at the annual tax levying period of the county council of Montgomery County and the county commissioners of Prince George's County next succeeding the rendition of said judgment or compromise, certify to said county council of Montgomery County and county commissioners of Prince George's County, a tax rate, in addition to that required for its interest, serial bonds and sinking fund requirements, that will, when levied and collected under the provisions of . . . [section 4-5 of this Code], produce an amount sufficient to satisfy said judgment or other sum including costs and counsel fees, if any, provided, however, that this provision shall relate only to any cause of action occurring subsequent to April 26, 1927. . . ."

The provision of § 1-3 authorizing the WSSC to certify a tax rate sufficient to produce funds to satisfy a judgment rendered against it was not part of the section as it was originally enacted. It was added by ch. 506 of the Acts of 1927, in apparent response to the decision in *Washington Suburban Sanitary Commission v. Magruder,* 12 F. 2d 832 (D.C. Cir.), decided May 3, 1926. *Magruder* held that while the WSSC could "sue and be sued," it was nevertheless immune from suit because under § 1-3 as it then read, and the controlling Maryland law, the agency had no means to satisfy judgments in tort suits because it had no power "to raise money for the purpose of paying damages." 12 F. 2d at 833. The 1927 amendment to § 1-3, which was effective only with respect to "any cause of action occurring subsequent to April 26, 1927," was, we think, a well-calculated and specific procedure to authorize the WSSC to acquire the funds necessary to satisfy a judgment rendered against it or to amicably settle

threatened litigation. When read as a whole, § 1-3 clearly expresses a legislative intent to waive the WSSC's sovereign immunity. To hold otherwise would be to disregard both the "sue and be sued" clause and the provision for satisfaction of judgments which follows it.

Notwithstanding this legislative consent to suits against WSSC, the agency argues that the purported waiver of its immunity is ineffective in the final analysis because it has no ability to mandate the actual collection of the money necessary to satisfy judgments rendered against it. We think the provision of § 1-3 requiring the WSSC to certify a tax rate in an amount sufficient to pay judgments against it reposes the requisite power in the agency to raise the funds necessary to satisfy a recovery. Whether the county council actually imposes and collects the mandated tax is not determinative of the waiver of WSSC's sovereign immunity. We hold that § 1-3 of the WSSD Code constitutes a legislative waiver of WSSC's immunity with respect to tort actions.

> *As to Appeal No. 48: Judgment reversed; costs to be paid by appellee.*
>
> *As to Appeal No. 49: Judgment reversed; costs to be paid by appellee.*
>
> *As to Appeal No. 50: Judgment reversed; costs to be paid by appellee.*