685 A.2d 873

**STATE of Maryland, CENTRAL COLLECTION UNIT**

v.

**DLD ASSOCIATES LIMITED PARTNERSHIP.**

**No. 307, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 3, 1996.

504

Michael Scott Friedman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellant.

Gerald R. Walsh, Baltimore, for Appellee.

Argued before MOYLAN, WENNER and HARRELL, JJ.

MOYLAN, Judge.

The State of Maryland Central Collection Unit (CCU), the appellant, filed a complaint in the Circuit Court for Baltimore County seeking payments for workers' compensation insurance premiums allegedly owed by DLD Associates Limited Partnership (DLD), the appellee, to the Injured Workers' Insurance Fund (IWIF). The trial court granted DLD's motion to dismiss the complaint, and this appeal ensured. The trial court did not specify what grounds argued by DLD formed the basis for its decision to grant DLD's Motion to Dismiss, and therefore, this Court must address the following questions:

1. Did the trial court err in finding that the Injured Worker's Insurance Fund is not an instrumentality of the State of Maryland for the purposes of the statute of limitations?

2. If IWIF is an instrumentality of the State, did the trial court err in finding that the Legislature has waived its sovereign immunity as to the statute of limitations on written contracts?

3. Did the trial court err in finding that the State of Maryland Central Collection Unit was not the real party in interest?

## Factual Background

On or about February 25, 1991, DLD applied for a workers' compensation insurance policy with IWIF. The coverage was effective on January 1, 1991, and coverage ceased on July 27, 1991, when the policy was cancelled. CCU alleges that at the time the policy was cancelled by IWIF, DLD continued to owe a balance. On May 11, 1992, a letter was sent by the Office of the Attorney General instructing DLD that it owed $25,117.27 to IWIF, and that if that sum were not paid within five days, the account would be turned over to CCU for further action.

On September 29, 1995, CCU filed a complaint in the Circuit Court for Baltimore County seeking to recover unpaid workers' compensation insurance premiums, in the amount of $25,-117.27, and collection/attorney fees in the amount of $4,280.14, allegedly owed by DLD to IWIF. CCU contended that, as the statutory assignee of IWIF, it was entitled to bring this action. On October 25, 1995, DLD filed a Motion to Dismiss, arguing that (1) IWIF is not a state agency, and as such, the three-year statute of limitations would apply and would time bar CCU's complaint, (2) even if IWIF is a state agency, sovereign immunity has been waived as to the statute of limitations involving contracts, and thus, CCU's complaint is still time-barred, and (3) CCU is not the real party in interest. The trial court, thereafter, entered an order granting DLD's motion.

## I.

## IWIF AS AN INSTRUMENTALITY OF THE STATE FOR PURPOSES OF THE STATUTE OF LIMITATIONS

This Court is once again asked to revisit the issue of sovereign immunity. As has been oft repeated,

[t]he doctrine of sovereign immunity from suit, rooted in the ancient common law, is firmly embedded in the law of Maryland. Although originally based on the tenet that "the King can do no wrong," the doctrine is presently viewed as a rule of policy which protects the State from burdensome interference with its governmental functions and preserves its control over State agencies and funds.

*Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 507, 397 A.2d 1027, 1030 (1979) (citations omitted). Sovereign immunity is not only applicable to the State itself, but also to its agencies and instrumentalities, unless the Legislature has waived immunity directly or by necessary implication. *Godwin v. County Comm'rs,* 256 Md. 326, 334, 260 A.2d 295, 299 (1970); *Katz,* 284 Md. at 507–08, 397 A.2d at 1030. Thus, whether IWIF enjoys sovereign immunity hinges on the answer to the question: Is IWIF an agency or instrumentality of the State? The importance of the answer to this question lies in the fact that neither "the statute of limitations nor laches applies to the State when it sues in its sovereign capacity in its own courts." *Cent. Collection v. Gettes,* 321 Md. 671, 675, 584 A.2d 689, 691 (1991). Therefore, if this question yields an answer in the affirmative, absent a finding that sovereign immunity has been waived by the Legislature, DLD will not be permitted to raise the statute of limitations defense.

"[T]here is no single test for determining whether a statutorily-established entity is an agency or instrumentality of the State for a particular purpose. All aspects of the interrelationship between the State and the statutorily-established entity must be examined in order to determine its status." *A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 35, 464 A.2d 1068, 1072 (1983). *See also, O & B, Inc. v. Md.–Nat'l Cap. P & P,* 279 Md. 459, 462, 369 A.2d 553, 555 (1977). The appellee stress to this Court, however, that the Legislature has taken the "guess-work" out of the proces of determining IWIF's status. The appellee argues that Md.Code Ann., *Lab. & Emp.* § 10–105 (1991 & Supp.1996), which states that IWIF "is independent of all State units," effectively expresses the

Legislature's determination that IWIF is not an agency or instrumentality of the State. We disagree.

We construe the phrase "independent of all State units" as the Legislature's expressed intent to have IWIF operate independently of other governmental departments or agencies, and not as an expressed intent to disavow IWIF, in its own right, as an agency or instrumentality of the State. Indeed, the intent that this language be one of separation rather than exclusion is evident in the fact that similar language has been used in other situations, albeit with more clarity, to express the desire of the Legislature to have an agency or instrumentality act independently of other units of government. *See Lab. & Emp.* § 9–301 (The Workers' Compensation Commission is characterized as "an independent unit of the State government."); Md.Code Ann., *State Fin. & Proc.* § 5–102 (1995) (The Office of Planning is characterized as "a separate unit of the State of Maryland."), Md.Code Ann., *State Gov't* § 9–906 (1995 & Supp.1996) (The Maryland Veterans Commission treated as "an independent unit, and except by statute, may not be made a part of another unit of the State government."); *State Gov't* § 9–1602 (The Office of Administrative Hearings made "an independent unit in the Executive Branch of State government."); Md. Ann.Code, *Fin. Inst.* § 13–702(c) (Supp.1995) (The Maryland Stadium Authority classified as "an independent unit in the Executive Branch of State Government."). We conclude, therefore, that the Legislature has not expressly addressed whether IWIF is an agency or instrumentality of the State. Nevertheless, we recognize that the failure of the General Assembly to designate IWIF as an agency or instrumentality does not preclude a finding that IWIF is an agency or instrumentality of the State. Indeed,

> on some occasions, the General Assembly has expressly characterized certain entities that it has established as State "agenc[ies]." ... Other entities established by the General Assembly have been expressly characterized as "not a department, agency, or instrumentality of the State." In some cases, the General Assembly has not expressly stated

whether an entity that it has established is or is not an agency or instrumentality of the State.... Whether such an entity is characterized as an agency or instrumentality of the State for a particular purpose depends on the facts.

*A.S. Abell,* 297 Md. at 39, 464 A.2d at 1074–75 (citations omitted). A consideration of the entire relationship between IWIF and the State leads this Court to conclude that IWIF is an agency or instrumentality of the State.

IWIF was established by the Legislature, and continues to be extensively controlled by state statute. *Lab. & Emp.* § 10–101, *et seq.* In creating IWIF, the Legislature subjected IWIF to various laws that are designed to apply to agencies or instrumentalities of government. For example, IWIF is classified by statute as a public body for purposes of the Open Meetings Act, and is subject to the Maryland Public Ethics Law. *Lab. & Emp.* § 10–105(b)(2). IWIF is subject to *State Gov't* §§ 10–611 to 10–628, which govern access to public records. Interestingly, public records are defined by the Legislature as records "made by a *unit or instrumentality of the State government* or of a political subdivision or received by the *unit or instrumentality in connection with the transaction of public business.*" *State Gov't* § 10–611(f)(1)(i) (emphasis added). The Legislature has expressly subjected IWIF to Title 12 of the State Government Article, which directly deals with sovereign immunity and liability of state agencies, instrumentalities, and personnel. *Lab. & Emp.* § 10–105(b)(2)(iii). IWIF also enjoys special property tax exemption status enjoyed by the State. *Lab. & Emp.* § 10–105(b)(3). Therefore, by subjecting IWIF to various statutes that apply only to State agencies or instrumentalities, the Legislature has implicitly acknowledged that IWIF is an agency or instrumentality of the State.

Moreover, the management and the financial operation of IWIF indicates that it is a state agency or instrumentality. As to the management of IWIF, the Governor, with the advice and consent of the Senate, appoints all seven members of the Board, and may remove a member of the Board for incompetence or misconduct. *Lab. & Emp.* § 10–110(a) & (e).

Each member of the Board is required to be a citizen of the State, and to take the oath required by Article I, § 9 of the Maryland Constitution. *Lab. & Emp.* § 10–110(b)–(c). The Board is required to prepare capital and operating budgets, and submit those budgets to the Senate Budget and Taxation Committee and the House Appropriations Committee for informational purposes. *Lab. & Emp.* § 10–120(b). The Board is also required to submit an annual report to the Governor, describing in detail such things as the growth of the Fund, changes in premiums earned, and number of policyholders. *Lab. & Emp.* § 10–126(a). The manner of conducting business is set forth in detail by statute, including considerations that must be made in creating a schedule of premium rates, assigning employers to a certain hazard class, methods of issuing policies and collecting premiums, and cancelling policies. *See Lab. & Emp.* §§ 10–130 to 10–138. Finally, the Legislature may end IWIF''s very existence, and if done, dispose with IWIF''s assets as it sees fit. *Lab. & Emp.* § 10–127.

As to IWIF''s financial operations, the State Treasurer is designated as the custodian of the Fund, and in an apparent effort to keep IWIF an independent unit, the Treasurer is required to keep the Fund separate from State money. *Lab. & Emp.* § 10–119. The "Fund" consists not only of premiums for insurance that IWIF issues, but income from investments that the State Treasurer makes for IWIF and money collected from IWIF''s debtors by the Attorney General. *Lab. & Emp.* § 10–118(a). The State Treasurer, in fact, controls how IWIF''s money is maintained, and when that money is disbursed. *See Lab. & Emp.* §§ 10–122 & 10–124. A Legislative Auditor conducts a fiscal audit of the accounts and transactions made by IWIF each year and a compliance audit of these same accounts every two years. *Lab. & Emp.* § 10–125(a)(1). Moreover, every three years, a statutory audit is conducted that requires the auditor to review, *inter alia,* the average length of time to process a claim, the percentage of claims contested, and whether IWIF unfairly discriminates between individuals of the same class and hazard level. *Lab. & Emp.*

§ 10–125(a)(2). The results of these audits are then submitted to the Governor and the Legislative Policy Committee.

The appellee points out several aspects of "self-control" IWIF enjoys, and argues that IWIF's ability to act independently demonstrates a lack of State control. For example, the appellee notes that IWIF's staff is exempt from classified service and that staff compensation is determined by the Board. While this may be true, the State need not enjoy complete control over the entity in order for that entity to be considered an instrumentality or agency of the State. *See A.S. Abell*, 297 Md. at 35–36, 464 A.2d at 1072. Based on the entire relationship that we have set forth, we hold that IWIF is a state agency or instrumentality for purposes of sovereign immunity. The ability of IWIF to control its operations in some respects does not negate the extensive State controls that do exist.

## II.

### WAIVER OF SOVEREIGN IMMUNITY AS TO THE STATUTE OF LIMITATION INVOLVING CONTRACT ACTIONS

The appellee, in support of its Motion to Dismiss, argues that even if IWIF is a state agency or instrumentality, IWIF is still subject to the statute of limitations because the Legislature has specifically waived sovereign immunity as to the type of contract action involved in this case. The appellee refers to Title 12 of the State Government Article, which provides:

> Except as otherwise expressly provided by a law of the State, the State, its officers, and its units *may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract* that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee.

*State Gov't* § 12–201(a) (emphasis added). From this language, the appellee reasons that IWIF is not permitted to sue

on a written contract where the action is barred under the appropriate statute of limitations for that action, which is three years pursuant to Md.Code Ann., *Cts. & Jud. Proc.* § 5–101 (1995). We disagree with the appellee's claim that the Legislature has waived sovereign immunity in this situation.

Generally, we have explained that "[s]overeign immunity is the common law doctrine that protects the State from suit without its consent. Therefore, absent a legislative waiver of immunity, suit does not lie against the State or any of its agencies." *Dept. of Public Safety v. ARA Health Serv., Inc.,* 107 Md.App. 445, 457, 668 A.2d 960, 966 (1995), *cert. granted,* 341 Md. 522, 671 A.2d 500 (1996) (citations omitted). Moreover, we have stated that "[a]s a statute in derogation of common law, S.G. § 12–201(a) must be strictly construed. Such a strict construction comports with the general rule that, since the General Assembly should not be deemed lightly to give away the State's immunity, statutory exceptions to sovereign immunity must be narrowly construed." *ARA,* 107 Md. App. at 457, 668 A.2d at 966. Finally, "[i]n examining a statute to determine whether it effectively waives immunity, we strive to effectuate the intent of the legislation." *Katz,* 284 Md. at 513, 397 A.2d at 1032. We interpret S.G. § 12–201(a) as the Legislature's effort to waive the State's sovereign immunity solely when the State is a *defendant* in an action based upon a written contract.

Indeed, without this waiver, no party could maintain a breach of contract action against the State. This waiver, however, does not concern the benefits enjoyed by the State as a plaintiff in a contract action under principles of sovereign immunity. Indeed, the statute provides that the State "may not raise the *defense* of sovereign immunity in a contract action." In this case, the State is not attempting to use sovereign immunity as a shield, i.e., a defense, but rather, is seeking to maintain an action that, without the benefit of sovereign immunity, would be barred, i.e., a sword. There is no indication that the Legislature ever intended to waive its protection as a plaintiff in such a contract action, but rather, the plain language of the statute evidences the Legislature's

clear intention only to waive that protection it would otherwise enjoy as a defendant.

■ We hold, therefore, that IWIF's claim is not barred by the statute of limitations as there has been no express waiver by the Legislature of sovereign immunity in this type of situation. "We have consistently declined to abrogate sovereign immunity by judicial fiat," *Dep't of Natural Resources v. Welsh,* 308 Md. 54, 59, 521 A.2d 313, 315 (1986), and we decline to do so again.

## III.

### CCU AS THE REAL PARTY IN INTEREST

■ Finally, DLD argues that dismissal of the action was appropriate because the real party in interest was not prosecuting the action. Maryland Rule 2–201 provides:

*Every action shall be prosecuted in the name of the real party in interest, except that* an executor, administrator, personal representative, guardian, bailee, trustee of an express trust, person with whom or in whose name a contract has been made for the benefit of creditors, or *a person authorized by statute or rule may bring an action without joining persons for whom the action is brought.*

Md. Rule 2–201 (emphasis added). The specific question to be answered, therefore, is whether CCU is authorized by statute to bring this action.

CCU is a unit of the Department of Budget and Management, and is represented by the Attorney General's Office. Md.Code Ann. *State Fin. & Proc.* § 3–301 & 3–206 (1995 & Supp.1996). CCU's collection responsibilities are as follows:

Except as otherwise provided in subsection (b) of this section or in other law, the Central Collection Unit is responsible for the collection of each delinquent account or other debt that is owed to the State or any of its officials or units.

*State Fin. & Proc.* § 3–302(a)(1). This section further provides:

An official or unit of the State government shall refer to the Central Collection Unit each debt for which the Central Collection Unit has collection responsibility under this subsection and may not settle the debt.

*State Fin. & Proc.* § 3–302(a)(2). CCU, therefore, is the State unit generally assigned to bring actions to collect money owed by private parties to the various state agencies or instrumentalities. Whether CCU is permitted to bring such an action on behalf of IWIF necessarily depends on whether there is any specific language affecting IWIF that would negate CCU from engaging in its normal duties.

The Labor and Employment Article, which governs the operations of IWIF, provides that,

the Board, the President of the Fund, or the Executive Vice President of the Fund *may ... refer to the Attorney General, for collection, the debt of any policyholder whose insurance is being cancelled under this paragraph.*

*Lab. & Emp.* § 10–133(b)(ii) (emphasis added). The statute also provides that the Attorney General may sue, in the name of the Fund, to collect the debt. The Board of IWIF is directed to "appoint or employ attorneys to advise and represent the Fund in all legal matters and, where necessary, to sue or defend suits in the name of the Fund." *Lab. & Emp.* § 10–113.

We do not read these statutes as contravening those addressing CCU's collection responsibilities. IWIF is permitted to refer a debt to the Attorney General for collection, and that office "may" sue in the name of IWIF. Necessarily, the Attorney General's Office could elect not to sue in the name of IWIF, and pursue the action as CCU. Indeed, both CCU and IWIF are represented by the Attorney General, and there is simply no indication that IWIF is not permitted to enjoy the benefit of having its debts collected by the Attorney General under the name CCU. We hold, therefore, that the CCU is an appropriate "real party in interest," and dismissal on this ground is improper.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE COUNTY REVERSED; COSTS TO BE PAID BY APPELLEE.*