Dear Dr. Hussein:
Your have requested our opinion whether local health departments must report the classifications and salaries of their State officers and employees as operating expenses in the annual State budget, pursuant to the budgetary disclosure provisions of § 7-121 of the Finance and Procurement ("SFP") Article, Maryland Code. They are required to do so if they are "units of the State government," as that term is used in SFP, § 7-121.
Our opinion is that, except for the Baltimore City Health Department, a local health department is a "unit of the State government" under SFP, § 7-121. Therefore, these local health departments must include the job classifications and salaries of their State officers and State employees in their disclosure of operating expenses.
We caution that this conclusion is not necessarily determinative of the status of local health departments in other contexts. As a prior opinion observed, "It is well established that an entity may be considered an agency, unit, or instrumentality of government for one purpose, but not for another." 70 Opinions of the Attorney Generalq 30, 32 (1985).
 I Background
SFP, § 7-121(a) provides that the budget books accompanying the annual budget bill are to contain, for each "unit of the State government," a three-year comparison of "the total number of officers and employees and the number in each job classification," "the total amount for salaries of officers and employees and the amount for salaries of each job classification," and "an itemized statement of the expenditures for contractual services, supplies and materials, equipment, land and structures, fixed charges, and other operating expenses. . . ." The term "unit of the State government" is not defined.
Following an audit of the Local and Family Health Administration, now the Community and Public Health Administration ("CPHA" or "the Administration"), of the Department of Health and Mental Hygiene ("DHMH" or "the Department"), the General Assembly's Office of Legislative Audits issued an audit report for the period from July 1, 1993 to March 20, 1996. The audit report, dated February 25, 1997, stated, in pertinent part, that SFP, § 7-121 requires that:
 Certain financial information related to each unit of State government be included in the annual budget submitted by the Governor to the General Assembly. Specifically, data concerning the number of employees and related salaries, as well as an itemized statement of operating expenditures (e.g., contractual services), is to be included for each unit for the last full fiscal year, the current fiscal year and as requested for the next fiscal year.
The audit pointed out, however, "that such data related to the local health departments [were] not included in the Department's annual budget submission. This issue is significant in view of the number of individuals employed at the local departments that are considered State employees by the Administration."[1] Audit report at 12. The report explained the omission this way: "We were advised by the Administration that the aforementioned information has not been included in the annual budget due to a lack of clarity as to whether or not local health departments can be considered units of State government." See
CPHA Local Health Department Employees Budget Report (February 10, 1998), and cover memorandum from the DHMH Budget Management Office, (February 13, 1998) ("1998 CPHA-LHD Budget Report"). Consequently, the report recommended that the Administration obtain an opinion from the Attorney General "to determine if local health departments are units of State government for purposes of budgetary disclosure" under SFP, § 7-121. Id.
This is not the first question of its kind about local health departments. In 71 Opinions of the Attorney General 128 (1986), Attorney General Sachs concluded that, "for purposes of collection of . . . debts, local health departments are units of the State."Id. The Attorney General cautioned, however, "that this conclusion cannot be regarded as determinative of the status of local health departments in other contexts." Id. at 1.
 II Funding of Salaries and Other Administrative Costs for Officers and Employees of Local Health Departments
Local health departments ("LHDs") currently employ approximately 4000 State employees, consisting of both regular employees (those with position identification numbers) and contractual employees; of these, more than 700 are paid exclusively through general funds.[2] General funds come to the State without restrictions on their use and, therefore, can be allocated to programs solely at the State's discretion. The approximately 3,300 remaining positions are funded by resources derived from one or more restricted funding streams (for example, federal grants.) 1998 CPHA-LHD Budget Report.
The majority of State employees employed at LHDs are paid from State appropriations derived from a combination of State funds and local matching funds. These local matching funds are provided to the State by its subdivisions to ensure the distribution of State appropriations, because under § 2-303
of the Health-General ("HG") Article, a local match of State appropriations is a condition of any distribution to a subdivision. These local matching funds are thus included by the Governor in the State budget "for local health services, exclusive of special fund and federal appropriations. . . ." HG, § 2-302(a).[3]
These appropriations of State and local matching funds "shall be used for programs, including related administrative expenses," that focus on six major categories of public health services provided through LHDs. HG, § 2-304. The statutory term "administrative expenses" surely includes wages and salaries, but the law does not provide, for example, a specific and uniform State/local funding ratio for the salaries of State employees of LHDs.[4] Moreover, for each LHD public health program that employs one or more State employees, the funding ratio for the salary of each such State employee is subject to continual change throughout each fiscal year, depending on the program served by that employee and the relative proportions of State and local funds appropriated and expended under each funding category or program listed in HG, § 2-304. See COMAR 10.04.01.07B (although each position is to be allocated to only one project, funding for a position may be split among several projects).
 III Determination of Status As Unit of State Government
Whether an entity is a unit of State government for a particular purpose is not always a simple matter to determine. 71 Opinions of the Attorney General 128, 129 (1986). Thus, while the General Assembly has explicitly designated some entities as State agencies, the absence of an explicit legislative designation is not by itself determinative of an entity's status.[5]Central Collectionv. DLD, 112 Md. App. 502, 509 685 A.2d 873
(1996) (General Assembly's failure to designate an entity that is "independent of all State units" as an agency or instrumentality of the State does not preclude a finding that the entity is an agency or instrumentality of the State). See generally A.S. AbellPublishing Co. v. Mezzanote, 297 Md. 26, 39, 464 A.2d 1068 (1983). Indeed, "there is no single test for determining whether a statutorily-established entity is an agency or instrumentality of the State for a particular purpose. Rather, all aspects of the interrelationship between the State and the statutorily-established entity must be examined in order to determine its status." Mezzanote, 297 Md. at 35.
Nor is the status of an entity for one purpose necessarily determinative of its status for other purposes. For example, the Washington Suburban Sanitary Commission ("WSSC") was held to be a State agency for purposes of applying the legal doctrine of sovereign immunity in Katz v. Washington Suburban Sanitary Comm'n,284 Md. 503, 512, 397 A.2d 1027 (1979). In reaching this determination, the Court of Appeals recognized the considerable degree of local control vested in the two counties in which the WSSC has jurisdiction: its membership is appointed entirely by the counties' executives and councils, and the WSSC's capital and operating budgets are subject to review and approval by counties' executives and councils. The Court nevertheless held that the WSSC is a State agency, for purposes of asserting a defense of sovereign immunity from suit, because the WSSC was created by public general law, has "regional functions and responsibilities," and was "created by the General Assembly as [a] State agenc[y] responsible for providing services which would otherwise be the responsibility of the counties." Katz, 284 Md. at 512.
In contrast, the WSSC was held not to be a State agency for purposes of applying a State statute that created an administrative remedy for the recovery of excess charges mistakenly paid to State agencies. Washington Suburban SanitaryComm'n v. C.I. Mitchell Best Co., 303 Md. 544, 561, 495 A.2d 30
(1985). In concluding that the refund procedure applicable to State agencies did not apply to the WSSC, the Court observed that WSSC's budget is not properly included in the State budget submitted by the Governor and approved by the General Assembly.303 Md. at 544. The Court explained that such budgetary disclosure was unnecessary because:
 WSSC's budget is approved by the county councils of the two counties within which the [Washington Suburban Sanitary] District lies [and] [t]he refund provisions of Article 81, § 215 and 216 contemplate a state agency which is at least subject to some role of the Comptroller in connection with disbursing funds.
Mitchell Best, 303 Md. at 544.
These two contrasting cases illustrate that an entity's status in relationship to the State must be understood in the context of the particular State law whose applicability to the entity is in question. Accordingly, the determination whether LHDs are units of State government for the purposes of State budgetary disclosure must be based on the relationship between the State and the LHDs, considered in light of the purposes of the budgetary disclosure statute, SFP, § 7-121. See 71 Opinions of theAttorney General at 131-134. We turn to this relationship in the next part of this opinion.
 IV Health Policy, Administrative, and Fiscal Relationships of the State, the County Boards of Health, and the Local Health Departments
A. Health Policy Control of Local Health Departments[6]
Pursuant to State public law, the governing body of a county is ex officio the board of health for the county, unless the governing body of a code or charter county establishes a board of health. HG, § 3-201. County boards of health were created by public general law to implement and administer DHMH programs, in order "to provide more efficient means of promoting the public health in this State." Chapter 22, Laws of Maryland 1886. While the power to "adopt and enforce rules and regulations on any nuisance or cause of disease in the county" is conferred on county boards of health, HG, § 3-202(d), their primary duties are established by the General Assembly pursuant to public general law. HG, § 3-202(a). These include reporting to the Secretary and "coordinat[ing] its activities with the Department." HG, § 3-202(b).
Moreover, the limited local authority conferred by State law on State-mandated county boards of health "may not be construed to affect in any manner any of the powers and duties of either the Secretary of Health and Mental Hygiene or the Secretary of the Environment, or any public general law relating to the subject of health." Article 25, § 3(n). Accord Article 25A, § 5(J). Rather, the Secretary "shall establish general policy for, and adopt standards to promote and guide the development of, the physical and mental hygiene services of this State and its subdivisions." HG, § 2-105(a) (emphasis added). Cf. HG, § 2-105(b) (Secretary shall supervise generally the administration of the health laws of this State and its subdivisions).
Rules and regulations promulgated by the Secretary are binding on the political subdivisions of the State. See 43Opinions of the Attorney General 190, 191 (1958) ("The rules and regulations of the State Board of Health [now DHMH] which have been duly promulgated are to be followed by all political subdivisions of the State, and no political subdivision may issue . . . rules and regulations which conflict with the policies set forth in the regulations and rules of the State Board of Health."). LHDs, therefore, are required, under the direction of the Secretary, to enforce "the State health laws and the policies, rules, and regulations that the Secretary adopts." HG, § 3-306(c)(4). Thus, the State has substantial control over the setting and implementation of State health policy at the local level.[7]
B. Administrative Control of Local Health Departments.
The local health officer is a deputy State health officer who has been nominated by the county and appointed, pursuant to HG, § 3-302, by the Secretary to oversee the operations of the LHD.[8] Before taking office, the appointee takes the oath of office required of State officers by Article I, § 9 of the Constitution. HG, § 3-302(e). As a special appointment in the State Personnel Management System, the county health officer is a State employee entitled to "the salary provided in the State budget," "reimbursement for expenses . . . as provided in the State budget," and any additional salary that the county may provide.
The county health officers are appointed by, and may only be removed with the concurrence of, the Secretary. HG, § 3-302(a) and (g).[9] The county health officer in turn appoints the staff of the LHD. HG, § 3-306(c)(2).
In some instances, it is true, most if not all LHD employees with the exception of the county health officer — are county employees paid largely, if not exclusively, through local funds. Nevertheless, the staff of the LHDs may be State personnel for some administrative purposes. For example, county employees of LHDs generally are "State personnel," for purposes of the Board of Public Works's authority to pay certain settlements or judgments.See §§ 12-401(6) (the term "State personnel" includes, except in Montgomery County, "an employee of a county health department") and 12-404(1) (Board of Public Works may pay a settlement or judgment against any State personnel) of the State Government ("SG") Article. This statute's legislative findings note that "State personnel," including county government employees of a county health department, "who are acting within the scope ofpublic duties and responsibilities are carrying out agovernmental program under law and, thus, are discharging a part of the purpose and sovereignty of the State." SG, § 12-402(2) (emphasis added).
Furthermore, the Secretary may delegate State duties, powers and functions, as provided by public general law, to a "county
official authorized to administer and enforce environmental laws." HG, § 3-306(d) (emphasis added). Thus, deputy State health officers — and, less directly, county officials and employees of LHDs who discharge "a part of the purpose and sovereignty of the State" — are subject to substantial State administrative control and oversight. Cf. Abell, 297 Md. at 35-38 (substantial State control of an entity is indicative of the entity's status as an agency or instrumentality of the State); Central Collection v.DLD, 112 Md. App. at 512 (State need not enjoy complete control over an entity in order for that entity to be considered an instrumentality or agency of the State).
C. Fiscal Control of Local Health Department Budgets.
While matching and supplemental local funds provide at least half of the State appropriations to LHDs, we nevertheless find that the State retains substantial overall fiscal control of the local health budgets of its political subdivisions. Once these local funds are received by the State Treasurer, they are "monies of the State," within the meaning of Article VI, § 3 of the Constitution of Maryland. Accordingly, they are then subject to further "disposition . . . as the General Assembly may direct" pursuant to Article III, §§ 32 and 52, which govern the appropriation and budgetary process. See 68 Opinions of theAttorney General 96, 99 (1983).
To the extent that matching local funds provided under HG, § 2-303 — which carry county-mandated restrictions on their expenditure — can be analogized to block grants, Attorney General Sachs concluded that restrictions on the expenditure of such funds:
 only govern the continued eligibility of the State for . . . [the] funds. Once those funds are received, they are "monies of the State" that must be deposited in the State Treasury. Once deposited in the Treasury, the funds are then subject to the regular appropriation process established by State law — which requires the Governor to provide for their appropriation in the Budget Bill and permits the General Assembly to strike, reduce, or qualify these appropriations.
68 Opinions of the Attorney General 86, 94-95 (1983) (emphasis added).
Moreover, State fiscal control of the salaries and wages of State officers and State employees in the LHDs is further indicated by § 2-402 of the State Personnel and Pensions ("SPP") Article, which provides that "the Central Payroll Bureau of the Office of the State Comptroller shall provide for the payment of all wages to each officer and employee of the State who is paidfrom funds appropriated by the General Assembly." Thus, unlike the WSSC — which was exempt from budgetary disclosure requirements because, among other factors, its fiscal administration was not "subject to some role of the Comptroller in connection with disbursing funds," Mitchell Best, 303 Md. at 544 — the LHDs rely extensively on the Comptroller's office for disbursement of funds to pay the salaries of their State officers and employees.
Furthermore, as we have previously observed, the Secretary has promulgated extensive regulations governing the fiscal administration of local health services. These regulations require the local health officer for each subdivision to submit to the Secretary an annual plan for the operation of the local health program and a budget for the program. COMAR 10.04.01.02. See 71Opinions of the Attorney General at 133. The regulations specify the format, contents and requirements of the operational plan and program budget in detail. COMAR 10.04.01.05-07. The plan and budget are submitted for review to DHMH and, upon approval by the Secretary, the budget, containing State, federal and required local matching funds, "shall be used as the basis of operation by the [local] health officer for State-supported services, and the basis of matching financial operation." COMAR 10.04.01.07D. Finally, records of a political subdivision's revenues and disbursements "relating to local health department activities" are subject to audit by DHMH. COMAR 10.04.01.08M(2). In sum, these factors are also indicative of a substantial degree of State fiscal control over LHD operational expenses, including the payment of the salaries of State officers and State employees.
D. Summary
Local health departments are bound by State public health policy and are subject to a substantial degree of State control over their administrative and fiscal matters. This close relationship between the State and local health departments in turn reflects a strong State interest, codified in public general law, in assuring the effective and coordinated delivery of public health services statewide. The Attorney General long ago observed that the protection of the public health of the people of this State "is one of the prime functions of the General Assembly in the exercise of the [State's] police power." 43 Opinions of theAttorney General at 191. Hence, county boards of health and county health departments are subject to substantial State administrative and fiscal control in furtherance of the public health.
In view of this relationship, we conclude that LHDs are "units of the State Government" for purposes of disclosure, in the annual budget, of State fiscal information and expenses, including the job classifications and salaries of State officers and State employees, associated with the operation of local health departments.
 V Conclusion
In summary, it is our opinion that, except for the Baltimore City Health Department, local health departments are units of State government for purposes of providing budgetary disclosure of all State operating expenses required by SFP, § 7-121, including the job classifications and salaries of their State officers and State employees. SFP, § 7-121 does not require disclosure of the positions and salaries of LHD employees who are on a county or municipal payroll.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 David R. Morgan Assistant Attorney General
_________________________ Robert N. McDonald Chief Counsel Opinions and Advice
[1] According to the audit report, "As of March 1996, approximately 3,500 State employees (regular and contractual) were employed at the local health departments according to the Administration's records."
[2] Officials concerned with local health administration often refer to these general funds as "state-targeted." See 1998 CPHA-LHD Budget Report.
[3] The proportion of State to local matching funds required for each subdivision by the Secretary of Health and Mental Hygiene, pursuant to HG, § 2-303, may vary considerably, but averages out to a 50/50 ratio of State funds to local matching funds, statewide. In practice, most subdivisions provide supplemental funds, in addition to the match required by law. Thus, on average, local matching funds required under HG, § 2-303, in combination with local supplemental funds currently provide in excess of 50% of the total funds available to LHDs statewide, with State funds making up the remainder. 1998 CPHA-LHD Budget Report.
[4] HG, § 2-302(c)(3) requires adoption of regulations to guide the distribution of the funding required under that section. Specifically, the Act requires the Secretary to promulgate regulations that "give consideration to appropriate measures of community health need, local funding effort, and other relevant factors" in calculating the proportion of State to local funds that together comprise the salary appropriations for most State positions at the LHDs. In compliance with this requirement, the applicable regulations incorporate historical "case formula principles" and fiscal year "matching percentages" for calculating the local match required for each subdivision. COMAR 10.04.01.04.
[5] Similarly, while HG, § 2-106(a) explicitly designates thirty units within DHMH, the mere absence of an explicit legislative designation of an entity is not by itself determinative of the entity's status in relation to the Department. See HG, § 2-106(b) (DHMH also includes every other unit that is in the Department under any other law). 
[6] Baltimore City and its Commissioner of Health are expressly excluded from the definitions of the terms "county" and "health officer," respectively, in HG, § 3-101(b) and (c). Thus, the provisions discussed in this section of the opinion are not applicable to the Baltimore City Health Department. See Special Revisor's Note to HG, § 3-101(b).
[7] The provisions of HG Title 3 are intended to apply in the same way and to the same extent to both "home rule" and "non-home rule" counties. 71 Opinions of the Attorney General
at 134-35 n. 6. Thus, the degree of autonomy enjoyed by a home rule county in other contexts has no bearing on the relationship between the State and that county with respect to the LHD's duty to provide budgetary disclosure pursuant to SFP, § 7-121. Id.
[8] The health officer for Baltimore City is a city official, appointed by the Mayor with the concurrence of the City Council, and not a deputy State health officer appointed pursuant to HG, § 3-302. See also note 6 above.
[9] Although HG, § 3-302(g) provides that the authority to remove the deputy State health officer for a county health department is shared with the county board of health, and not vested solely in the Secretary, this is not indicative of the status of the LHD as an essentially county government agency. Cf.Clea v. City of Baltimore, 312 Md. 662, 669 n. 4, 541 A.2d 1303
(absent an explicit legislative designation, the fact that the head of an agency may be appointed by a local government executive, rather than the Governor, while a factor to be considered, is not itself determinative of the agency's status as a local government entity).
 *Page 192